UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES and STATE OF TEXAS *ex rel.* Frank Adomitis, *Qui Tam* Relator, | ) ) ) Case No._____ ) |
| v. | ) FILED *IN CAMERA* UNDER SEAL ) Pursuant to 31 U.S.C. § 3730(b)(2) |
| LIBERTY COUNTY HOSPITAL DISTRICT NO.1) DBA LIBERTY-DAYTON REGIONAL MEDICAL CENTER, *Defendant.* | ) DO NOT ENTER ON PACER ) DO NOT PLACE IN PRESS BOX ) JURY TRIAL DEMANDED ) |

## ORIGINAL COMPLAINT

*Qui Tam* Relator Frank Adomitis ("Adomitis" or "Relator"), individually and on behalf of the United States of America and the State of Texas, alleges as follows:

1.      Since at least 2003, and continuing to the present, Liberty County Hospital District No. 1 doing business as Liberty-Dayton Regional Medical Center ("Liberty"), knowingly presented millions of dollars in false claims to the United States and Texas for payment in violation of False Claims Act, 31 U.S.C. § 3729 *et seq.*, as amended, and the Texas Medicaid Fraud Prevention Act ("TMFPA"), Hum. Res. Code § 36.001, *et seq.* in that, Defendant billed Medicare and Texas Medicaid for costs and services that were not reimbursable or reimbursable at a lower rate.  Specifically, Defendant billed federally funded healthcare programs, including Medicare and Texas Medicaid, for Critical Access Hospital ("CAH") health care services and costs that were not eligible for payment or were eligible for payment at a lower rate because Liberty did not meet the distance requirements to qualify as a CAH.

2.      Liberty is not separated from the nearest hospital by more than 15 miles in which there is no primary road (and is not a necessary provider), so cannot qualify as a CAH. By falsely

1

certifying and recertifying Liberty's CAH status on cost reports and other claims, Defendant then knowingly and recklessly billed federally funded health care programs, including Medicare and Texas Medicaid, for millions of dollars at the higher CAH reimbursement rates and payment structures.

## JURISDICTION AND VENUE

3.      United States Courts for the Eastern District of Texas have jurisdiction over the claims pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3732(a), (b), because Relator is a private person bringing a civil action on behalf of the United States Government for violations of 31 U.S.C. § 3729, *et seq.*; because the United States is a plaintiff, 28 U.S.C. § 1345, because Relator is bringing a civil action brought under the laws of the State of Texas for the recovery of funds paid by a State agency also arising from the transactions or occurrences as proscribed under 31 U.S.C. § 3729, *et seq.*; and because Defendant transact business within the Eastern District of Texas. Furthermore, this Court possesses proper jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

4.      Venue is proper in the Eastern District of Texas under 28 U.S.C. §§ 1391(b) and (c), and 31 U.S.C. § 3732(a), because the acts proscribed by 31 U.S.C. § 3729, *et seq.*, and complained about herein took place in this District and because at all relevant and material times, Defendant transacted business in the Eastern District of Texas.

5.      All conditions precedent to bring this suit have occurred.

## PARTIES

6.      *Qui Tam* Relator/Plaintiff, **Frank Adomitis,** is a citizen of the United States, and a resident of the State of California. In accordance with the False Claims Act, 31 U.S.C. §

2

3729 *et seq.* and TMFPA § 36.101, Relator brings this action on behalf of, and in the name of, the United States and the State of Texas. The allegations contained within this Complaint are within Relator's personal knowledge and experience.

7.     **Defendant, Liberty County Hospital District No. 1 dba Liberty-Dayton Regional Medical Center ("Liberty"),** is a Texas non-profit corporation located at 1353 North Travis Street, Liberty, Texas 77575-3549, the ("Hospital"). Liberty's National Provider Identifier is 1881769222. Liberty's Medicare Number is 451375.

## THE LAW

8.     The False Claims Act provides in relevant part that:

> (a) Any person who (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid by the Government; (3) conspires to defraud the Government by getting a false or fraudulent claim paid or approved by the Government; ... or (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to Government, ... is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of the damages which the Government sustains because of the act of that person ... (b) for purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(a).

9.     A private person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the

Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting. *See* Title 31 U.S.C. § 3730(b)(1).

10. Under 31 U.S.C. §§ 3730(d)(1), (2), a Qui Tam Plaintiff is entitled to share of award as follows:

> If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action ...

> If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds.

11. Liability under the FCA attaches when a defendant submits a claim for payment to the Government in which the defendant makes specific representations about the items or services provided, but fail to disclose defendant's noncompliance with a material statutory, contractual, or regulatory requirement, although noncompliance renders the representations about the items or services provided misleading. *See Universal Health Services, Inc. v. United States*, 136 S. Ct. 1989, 2001, 195 L. Ed. 2d 348 (2016).

12. False statements by a hospital on Medicare cost reports that increases payments to the hospital are material and actionable under the False Claims Act. *United States v. Bourseau*, 531 F.3d 1159, 1165 (9th Cir. 2008)("[C]ost report entries were material because they had the potential effect, or natural tendency, to decrease the amount [defendant] owed Medicare in

overpayments, despite the fact that cost reports were never audited."); *U.S. ex rel. Kennedy v. Aventis Pharm., Inc.,* 610 F. Supp. 2d 938, 943 (N.D. Ill. 2009)(materiality requirement is satisfied if the relator pleads (1) a description of how payments are calculated is plead from which a reasonable inference may be drawn that the inclusion of false statements in a cost report increase payments to the hospital, and (2) allegations that the hospital actually received significant payments for the relevant time periods).

13.     Each Medicare cost report submitted by a hospital contains a certification statement whereby the hospital expressly certifies "that I am familiar with the laws and regulations regarding the provision of health care services and that the services identified in this cost report were provided in compliance with such laws and regulations."

14.     FCA violations can be based upon a false certification of statutory or regulatory compliance when the certification was a condition of or prerequisite to payment by the government. *Mason v. Medline Indus., Inc.,* 731 F. Supp. 2d 730, 739 (N.D. Ill. 2010). Cost report certifications are a required condition of government payment under federal healthcare programs. *Id.* Certifications are material to government reimbursement under Medicare. *Id.*

15.     Companies, like the Defendant, "will be liable for violations of the False Claims Act if its employees were acting within the scope of their authority and for the purpose of benefitting the corporation." *United States v. Hangar One, Inc.,* 563 F.2d 1155, 1158 (5th Cir. 1977); *see also Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.,* 456 U.S. 556, 565-66, 102 S. Ct. 1935, 1942, 72 L. Ed. 2d 330 (1982) ("[P]rincipals are liable when their agents act with apparent authority."); *U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc.,* 727 F.3d 343, 353 (5th Cir. 2013) (corporations are

5

liable under the FCA for misconduct of employees acting (a) within the scope of their employment, or (b) outside the scope of their employment with apparent authority).

16.     When calculating FCA damages when an offset is appropriate, the amount of the Medicare/Medicaid payments should be tripled, and the statutory penalty added for each of the invoices. The Supreme Court explained that when deducting the "bargain" received from a defendant, a court must begin with the already tripled amount. *See Longhi*, 575 F.3d at 473, citing *United States v. Bornstein*, 423 U.S. 303, 314 (1976) (superseded on other grounds). If an offset were allowed for any benefit the Government received, the offset would come off the treble damages, not before. *See Longhi*, 575 F.3d at 473.

<u>CRITICAL ACCESS CARE HOSPITALS</u>

17.     Congress created a favorable Medicare reimbursement schedule and cost reimbursement payment, for rural facilities designated as "critical access hospitals." 42 U.S.C. §§ 1395i–4, 1395f. "A critical access hospital is defined in part by the type of roads that connect the facility to the next nearest hospital." *Baylor County Hospital District v. Price*, 850 F.3d 257, 259 (2017).

18.     To be a CAH, a hospital must be "located more than a 35–mile drive (or ... in areas with only secondary roads available, a 15–mile drive) from a..." another hospital, 42 U.S.C. § 1395i–4(c)(2)(B)(i)(I).   There are two standards to judge whether a hospital meets the CAH distance requirements: (1) a 15 mile standard if only secondary roads are available, and (2) a 35 mile default standard if roads other than secondary roads are available. *Baylor*, 850 F.3d at 259.

19.     There are three types of primary roads: (1) numbered federal highways, including interstates, intrastates, expressways or any other numbered federal highway; (2) numbered state highways with two or more lanes each way; and (3) roads shown on a map prepared in

accordance with the U.S. Geological Survey's Federal Geographic Data Committee Digital Cartographic Standard for Geologic Map Symbolization as a primary highway, divided by median strip. *Id.*

20.     To qualify under the secondary roads provision, a facility must be separated from the nearest hospital by more than 15 miles in which there is no primary road. *Id.* at 259-260. That is, there must be more than 15 miles of road between the hospitals that is not a numbered federal highway, a numbered state highway with two or more lanes each way, or a road shown on a particular map as a primary highway divided by median strip. *Id.*

### THE MEDICAID PROGRAM

21.     The United States and the State of Texas fund the Texas Medicaid Program Medicaid, Chapter 32 of the Human Resources Code. Texas Medicaid is administered through the Department of Health and Human Services, the Texas Medicaid & Healthcare Partnership, the Texas Department of State Health Services, and Texas Health and Human Services Commission ("HHSC" or "Commission").

22.     "Federal health care program" in 42 U.S.C. § 1320a-7b(b) means "any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States. 42 U.S.C. § 1320a-7b(f). Texas Medicaid is a federal health care program.

23.     At all relevant times, the hospital owned, operated, or managed by Defendant submitted claims to Texas Medicaid.

### TEXAS MEDICAID FRAUD PREVENTION ACT

24.     TMFPA § 36.101 authorizes a private person to bring a civil action for a violation of TMFPA § 36.002 for the person and for the state. Whether or not the state proceeds with the

action, the person bringing the action may recover an award. TMFPA § 36.110. Under TMFPA §

36.002, a person commits an unlawful act under the TMFPA if the person

> (1) knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized. TMFPA § 36.002(1).

> (4) knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning: (B)   information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program; TMFPA § 36.002(4).

> (13) knowingly engages in conduct that constitutes a violation under Section 32.039(b).

> A person violates Hum. Res. Code. §32.039(b) if the person:

> (1)  presents or causes to be presented to the commission a claim that contains a statement or representation the person knows or should know to be false.

## PERSONAL KNOWLEDGE

25.    The factual allegations contained in this document are within the personal knowledge of Relator.  The allegations are consequently based on his personal knowledge and experience.

## FACTUAL ALLEGATIONS

26.     Liberty operates a hospital at 1353 N Travis St, Liberty, Texas 77575, known as Liberty-Dayton Regional Medical Center.

27.     Liberty files annual cost reports with the CMS and Texas Medicaid. These reports contain an identical certification statement:

> ...and to the best of my knowledge and belief, this report and statement are true, correct, complete and prepared from the books and records of the provider in accordance with

applicable instructions, except as noted. I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

28.     However, since at least 2003, each of these reports contained the false statement that Liberty qualifies as a CAH. For example, on its 2016 fiscal year cost report Liberty answered Yes to question 105.00 "Does this hospital qualify as a CAH?"

29.     Houston Methodist Baytown Hospital ("Baytown") formerly Houston Methodist San Jacinto Hospital is a hospital located at 4401 Garth Road, Baytown, Texas 77521. Baytown is the closest hospital to Liberty at 30.2 miles away. Baytown opened in 1948, more than 70 years ago.[1]

30.     Primary roads make up 25.1 miles of that 30.2 mile route. Liberty is separated from the nearest hospital, Baytown, by only 5 miles in which there is no primary road.

    (a)     secondary roads: 5 miles

        (1)     N Travis and Bowie St, Liberty, Texas to US-90: 1.1 miles

        (2)     I-10 W exit 793, N. Main St and Baker Rd. to Baytown: 3.9 miles.

    (b)     primary roads: 25.1

        (1)     U.S. Highway 90 or U.S. Route 90: 5.7 miles

        (2)     Texas State Highway 146,  a numbered state highway with two or more lanes each way: 15.4 miles

        (3)     Interstate 10: 4 miles.

31.     To qualify under the secondary roads provision, a facility must be separated from the nearest hospital by more than 15 miles in which there is no primary road. There are about

---

[1]About Baytown Hospital, https://www.houstonmethodist.org/locations/baytown/about/.

five miles of that separates Liberty from Baytown in which there is no primary road, therefore Liberty does not meet the mileage qualifications for CAH status.

31.     As a consequence of its fraudulent CAH status, since at least 2003 Liberty has availed itself of reimbursement payment enhancements including, reimbursement abased on 101 percent of reasonable costs for inpatient, outpatient, and covered skilled nursing; reimbursement for on-call emergency room providers, including physicians assistances, nurse practitioners, and clinical nurse specialists; and payment under periodic interim payment method for inpatient services.

32.     As a consequence of its fraudulent CAH status, since at least 2003 Liberty has elected to be billed under the elective TEFRA[2] method, which allows for a cost plus fee schedule for professional services. Liberty was reimbursed up to 115 percent of the allowable amount for professional services and 115 percent of 85 percent of the allowable amount for non-professional services.

33.     As a consequence of its fraudulent CAH status, since at least 2003 Liberty was reimbursed a greater rate of its costs than it should receive from Medicare and Texas Medicaid.

<u>FIRST CLAIM FOR RELIEF</u>

Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
Presenting False Claims

34.     Since at least 2003 and continuing to the present, Defendant knowingly submitted or caused the submission of false claims to the United States for payment. Defendant submitted claims that were not eligible for reimbursement or were eligible at the lower standard rate, including claims for services which were reimbursed at the higher CAH rate and cost

---

[2] Tax Equity and Fiscal Responsibility Act of 1982 (Pub.L. 97-248).

reports for reimbursement of costs at the higher CAH rate.  Defendant was aware or recklessly disregarded CAH requirements, but knowingly or recklessly certified that Liberty was qualified as a CAH on cost reports. Defendant then knowingly and recklessly billed federally funded health care programs, including Medicare for services and costs as a CAH when it did not qualify.

35.     The United States was unaware of the falsity of the claims submitted or caused to be submitted by Defendant and in reliance on the accuracy thereof, paid the false claims because the Defendant knowingly submitted claims for CAH schedule services and costs without disclosing that it did not qualify as a CAH due to distance requirements

## SECOND CLAIM FOR RELIEF

### Violation of False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Making False Statements

36.     Since at least 2003 and continuing to the present, Defendant knowingly made or caused to be made or used false statements to obtain payments from the United States for false or fraudulent claims. These claims were for services and cost reimbursement.  Defendant was aware or recklessly disregarded CAH distance qualifications, but certified that Liberty qualified as a CAH.   Defendant then knowingly and recklessly billed federally funded health care programs, including Medicare and Medicaid, for costs and services that the higher CAH reimbursement rates.

37.     The United States was unaware of the falsity of the statements made or caused to be made by Defendant and in reliance on the accuracy thereof, paid the false claims because the Defendant knowingly submitted claims for CAH schedule services and costs without disclosing that it did not qualify as a CAH due to distance requirements.

11

## THIRD CLAIM FOR RELIEF

### Hum. Res. Code Sec. 36.002(13), 32.039(b)(1)
### Presenting False Claims

38.     Since at least 2003 and continuing to the present, Defendant presents or causes to be presented to the commission a claim that contains a statement or representation the person knows or should know to be false, in violation of Hum. Res. Code § 32.039(b)(1), and therefore violated TMFPA § 36.002(13), in that Defendant falsely certified that it qualified as a CAH on cost reports for a higher reimbursement, when it failed to meet the distance requirements.

39.     Each of Defendant' claims to Medicaid for CAH reimbursed services and costs, constitutes an Unlawful Act under Tex. Hum. Res. Code § 36.002(13).

## FORTH CLAIM FOR RELIEF

### Hum. Res. Code Sec. 36.002(1)
### False Statements to Receive a Benefit

40.     Since at least 2003 and continuing to the present, Defendant knowing made or caused to be made false statements and misrepresentations of material fact to permit a person to receive a benefit or payment under the Medicaid Program that is not authorized or that is greater than the benefit or payment that is authorized in violation of TMFPA § 36.002(1).

41.     Each of Defendant' claims to Medicaid for CAH reimbursed services and costs, constitutes an Unlawful Act under Tex. Hum. Res. Code § 36.002(1). Defendant's false statements and/or misrepresentations permitted them to receive benefits under the Medicaid program that were greater than benefits authorized, in violation of TMFPA § 36.002(1).

### FIFTH CLAIM FOR RELIEF

#### Hum. Res. Code Sec. 36.002(4)(B)
#### False Statements Concerning Material Facts

42.     Since at least 2003 and continuing to the present, Defendant made, or caused to be made, induced, or sought to induce, the making of false statements or misrepresentations of material facts concerning information required to be provided by a federal or state law, rule, regulation or provider agreement pertaining to the Medicaid Program in violation of TMFPA § 36.002(4)(B).

43. Each of Defendant' claims to Medicaid for CAH reimbursed services and costs was a false statement or misrepresentation of a material fact concerning information required to be provided by a federal or state law, rule, regulation or provider agreement pertaining to the Medicaid Program in violation of TMFPA § 36.002(4)(B).

### PRAYER FOR RELIEF

WHEREFORE, *Qui Tam* Realtor/Plaintiff, Frank Adomitis, requests that judgment be entered in its favor and against Defendant, as follows:

A.     Three times the amount of damages that the United States sustains because of the acts of the Defendant, and two times the amount of damages that the State of Texas sustains because  of the acts of the Defendants.

B.     The statutory civil penalty of for each violation of the False Claims Act and Texas Medicaid Fraud Prevention Act.

C.     An award to the *Qui Tam* Plaintiff for collecting the civil penalties and damages;

D.     Award of an amount for reasonable expenses necessarily incurred;

E.     Award of the *Qui Tam* Plaintiff's reasonable attorneys' fees and costs;

13

F.      Interest; and

G.      Such further relief as the Court deems just.

Respectfully submitted,

HILDER & ASSOCIATES, P.C.

Philip H. Hilder
State Bar No. 09620050
Paul L. Creech
State Bar No. 24075578
819 Lovett Blvd.
Houston, Texas 77006
Telephone (713) 655-9111
Facsimile (713) 655-9112

ATTORNEYS FOR *QUI TAM* RELATOR,
Frank Adomitis

14